IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2019 Session

**CHRISTINA JONES THOMAS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Washington County**
**No. 41091     Lisa Rice, Judge**

_____

**No. E2018-01374-CCA-R3-PC**

_____

The Petitioner, Christina Jones Thomas, was convicted by a jury of especially aggravated robbery and especially aggravated kidnapping, for which she received an effective sentence of eighteen years' imprisonment. State v. Christina Jones Thomas, No. E2013-01531-CCA-R3-CD, 2014 WL 3440687, at *1 (Tenn. Crim. App July 14, 2014), perm. app. denied (Tenn. Nov. 20, 2014). The Petitioner subsequently filed a petition seeking post-conviction relief, arguing that trial counsel was ineffective on multiple grounds, including (1) failure to secure an expert witness for trial; (2) failure to seek scientific testing of evidence presented by the State and failure to challenge such evidence; (3) failure to present a plea offer to the Petitioner; (4) failure to challenge and remove a juror whom the Petitioner knew and felt would be biased against her; (5) failure to impeach the victim about inconsistencies in his statements; (6) failure to address merger of the underlying offenses; and (7) failure to question the victim or present evidence of other injuries sustained by the victim that could have alleviated the seriousness of the Petitioner's crimes. The trial court denied relief by written order, which the Petitioner now appeals. In addition, the Petitioner also argues that she is entitled to a second post-conviction hearing because post-conviction counsel was suspended from the practice of law by the Tennessee Supreme Court shortly after the post-conviction hearing. Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Cameron L. Hyder, Elizabethton, Tennessee, for the Petitioner, Christina Jones Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Kenneth C. Baldwin, District Attorney General; and Erin McArdle, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This court provided an extensive factual recitation supporting the Petitioner's convictions in the opinion on direct appeal, and it is not necessary to repeat it for purposes of this appeal. As relevant here, the proof at trial established that on April 9, 2005, the Petitioner and her co-defendant husband beat and robbed the victim, the person from whom they rented a mobile home. The Petitioner had asked the victim to come to the mobile home to pick up the rent and to cash a recently received income tax check. When the victim entered the trailer,

> [T]he co-defendant started hitting the victim in the head, and the victim fell forward. The co-defendant continued to hit him multiple times. During the beating, the co-defendant placed his knee in the victim's back and asked the [Petitioner] to "come here and help [him] hold" the victim. The [Petitioner] came to assist. She also removed the victim's wallet from his pants at the urging of the co-defendant. According to the victim, the co-defendant continued to hold him down and beat him with "a club of some kind[,]" and while this occurred, the [Petitioner] hit him twice in the head with a hard object, leaving two puncture wounds. [The victim] was not sure of the object the [Petitioner] used to inflict these blows, but he was sure it was not a fist. The victim testified that he had between $4,200 and $4,500 in cash and $900 in checks inside his wallet when it was taken from him. The victim stated that he was not armed during the incident, although he often carried a weapon.

Id. at *2. The victim testified that he did not lose consciousness during the beating, and that the Petitioner "tied his hands behind his back, tied his feet together, stuffed a dirty sock in his mouth, and tied something around his head." Id.

After they left, the victim called the police and was later treated at the hospital for the injuries to his head. Id. at*3. According to the victim, a nurse stated that she could "see all the way down in [side his] head." Id. Thereafter, a doctor put seventeen "clamps" in the victim's head to close the hole. Id. The victim testified that his head hurt "a lot" while he was healing from the beating. Id.

Upon searching the mobile home, officers found "drops of blood on the floor, blood stains on the couch, a hammer, a rope, a belt, and a 'child's bat' in the living room and kitchen area." Id. The Petitioner and the co-defendant husband were eventually apprehended in Colorado and extradited to Tennessee. Id. A criminal investigator interviewed the Petitioner, during which she stated:

that the victim "grabbed [her] breast, [and] he offered to handle it this way or that way[,]" so she "hit him," but would not "say with what," only that she "hit him [be]cause she wanted him to stop." The [Petitioner] said that they fled because the victim had placed a "hit" on them, that they had two or three hundred dollars on them when they left the trailer, that the victim had tied himself, and that they went back to check on him "but [were] afraid he'd shoot [them]."

Id.

The co-defendant testified at the Petitioner's trial, in relevant part, as follows:[1]

[T]he [Petitioner] informed him that the victim had propositioned her, that he had the [Petitioner] call the victim to come to the residence so that he could confront the victim, that the family had no plan to move to Arkansas that day, and that they intended on paying rent to the victim that day when the victim came to the mobile home. [He] also claimed that the victim "got hostile" with him once the victim was inside the trailer and that he became angry and "jumped on" the victim. According to [the co-defendant], he only hit the victim three times with fists; the [Petitioner] was not involved in the assault; he never saw the [Petitioner] take the victim's wallet; she had no money until [he] gave her some once they were driving away in the car, and he, not the [Petitioner], was the one who tied the victim up before they left.

Id. at *4. The co-defendant also testified that that they obtained $3,000 from the victim that day. Id.

Nearly two years later, in January 2007, the victim went to the hospital with severe headaches, stomach sickness, unsteady gait, difficulty understanding and responding to words, slow registration and response time, and a slight decrease in his ability to use his right upper extremity. Id. His doctor, classified as an expert in the field of neurology at trial, testified that the victim required brain surgery due to a "[subdural] hematoma" or bleeding in his brain. Id. The victim had told his doctor of the beating "twenty-two months[']" earlier at the hands of the defendants, stating to his doctor that "he had been hit with a pistol multiple times in the back of the head." Id. Since the beating was the only known traumatic event the victim suffered sufficient to produce this injury, the expert opined, to a reasonable degree of medical certainty, that the beating was the cause.

---

[1] On November 19, 2010, the co-defendant, James Steven Thomas, pled guilty to these offenses and received a sentence of ten years and one day.

Id. Although the victim had been in an intervening car wreck, the wreck was minor and, in the expert's opinion, it did not cause the subdural hematoma. Id.

**Post-Conviction.** The Petitioner subsequently filed a timely, pro se petition for post-conviction relief, alleging two grounds for relief: (1) that the evidence was insufficient to convict her and (2) that she received ineffective assistance of trial counsel. As part of her ineffective assistance of counsel claim, the Petitioner alleged that counsel was ineffective in the following ways: (1) failure to protect the Petitioner's rights during the plea bargain stage; (2) failure to secure expert medical testimony; (3) failure to conduct DNA and scientific testing on the alleged weapons; and (4) demonstrated deficient performance during voir dire, resulting in a biased juror being impaneled. On March 7, 2016, the post-conviction court entered a preliminary order on the Petitioner's petition for post-conviction relief, dismissing the insufficiency of the evidence claim because the Petitioner raised that issue on direct appeal but finding that the Petitioner had presented a colorable claim for relief on the ineffective assistance of counsel claim. The post-conviction court also appointed counsel to represent the Petitioner at the post-conviction hearing. Petitioner's counsel filed several motions, including an amended petition for post-conviction relief, striking the Petitioner's initial claim of insufficiency of the evidence and reasserting the Petitioner's claim for ineffective assistance of counsel. The following claims were added to the amended petition: (1) failure to utilize the evidence to argue that the offenses should have merged; (2) failure to investigate and/or present to the jury an alternative cause of the victim's injury contained in the victim's medical records; (3) failure to object to "inflammatory" hearsay statements made by the victim at trial; and (4) failure to impeach the victim at trial based on prior inconsistent statements. The State filed its response on May 9, 2017, denying these allegations.

The post-conviction court held an evidentiary hearing on June 5, 2017. The Petitioner testified that "during her trial phase and prior to [her] trial," she was given a plea agreement offer of twelve years and one day at one-hundred percent. She explained that she accepted this offer, but that the trial judge "pulled" the offer when the Petitioner told him that "if it was just solely up to [her], then [she] probably would have went [sic] to trial." Following this hearing, the Petitioner was appointed new counsel, who represented her throughout trial and on appeal. She said that she and trial counsel discussed a "couple of different things," but nothing was "affirmed completely." She stated, "[R]ight before we went to trial, there was a ten (10) at thirty (30), he thought that maybe he could get and it didn't go through, and I believe maybe a ten (10) at one hundred (100), I'm not quite sure. I think that was the second." The Petitioner testified that she did not believe that she had an opportunity to accept either of those offers and that she would have been willing to accept the offer of ten years at one-hundred percent.

- 4 -

The Petitioner also testified that trial counsel was ineffective for failing to present expert testimony at trial. She stated that previous counsel looked into this issue extensively, consulting with two different expert witnesses about the victim's injuries. She said she "found out that being indigent that the State, [they] could have petitioned the State for funds for an expert witness to be brought in to-for [sic] testimony on [her] behalf because there was instances looking through the records that [she] had found that it was questionable to [her] and also questionable to-there's [sic] two doctors that were spoken to, two neurologists[.]" She believed that there were inconsistencies in the State's expert witness's conclusions that needed to be looked into a "little further." She stated that she went through the victim's medical records with two of her prior attorneys and found two CAT scans and two MRIs. She testified that she discussed her desire to obtain an expert witness with trial counsel, and trial counsel responded, "[T]he State doesn't typically like to give funds for those kinds of things[.]" She stated that this issue remained a "sticking point" between her and trial counsel throughout trial.

Next, the Petitioner was aggrieved that no scientific or biological testing was conducted on the alleged weapons that were used on the victim; therefore, she theorized that, "[i]t was circumstantial evidence that was introduced to the jury with no testing, no nothing." She stated that her co-defendant testified that he hit the victim with his fist twice, but "at trial, they handed the jury a hammer and a claw hammer and a baseball bat and said that [she] hit them with one of those things." She believed that this was the reason that the jury found her guilty. She testified that she understood the importance of the weapon to be tied to the "aggravated" and "serious bodily injury" elements of the crimes with which she was charged. She stated that the perception of the weapons "was horrible." She believed that the evidence could have been suppressed if trial counsel had submitted it for scientific or biological testing. She stated that she discussed this issue with trial counsel but "[I]t was just not done."

The Petitioner also testified that she knew a woman on the jury who worked at the detention facility as a nurse and whose husband the Petitioner had previously worked with at a car dealership. The Petitioner stated that she and the juror's husband "weren't on great terms[,]" and she "didn't want that relationship brought into the jury." She stated that the trial judge asked this juror if she knew the Petitioner and if she could be unbiased in coming to a conclusion, and the juror responded that she could. The Petitioner then claimed that she had addressed this concern with trial counsel during jury selection, while they still had strikes available. She claimed that trial counsel believed that this juror would be beneficial to the defense "because she was a nurse and…she may be able to have knowledge [sic] of the neurological part of the surgery and she may be…beneficial as far as giving information to the jury at that point."

The Petitioner testified further and explained her belief that she should not have been charged with both crimes of especially aggravated kidnapping and especially aggravated robbery. She believed the convictions should have been combined, and she was aggrieved by trial counsel's failure to address this issue. She also said that trial counsel never challenged this issue by impeaching the victim about the inconsistent statements that he gave about the attack. She stated that her discussion with trial counsel about this issue got "lost in translation somewhere along the way."

The Petitioner also believed that the cause of the victim's brain surgery was something other than the offense. She stated that while looking through the victim's medical records, she discovered that the victim was hospitalized in 2006 after being "raided by the DEA" and "slammed on the floor." She believed that, based on the expert medical witness's testimony, this "swift movement" could have caused the victim's brain to bleed. She stated that trial counsel had access to these records during her trial, but he did not present this as an "alternative cause" for the victim's injuries. She noted, however, that trial counsel did cross-examine the victim about a car wreck that he had been in a few weeks prior to his brain surgery.

The Petitioner believed that trial counsel should have "intervened" while the victim was testifying. She stated that the victim's testimony had changed multiple times, specifically from the police report made at the time of the offense to the preliminary hearing and throughout trial. She said that when the "conflicting testimony came out in trial," trial counsel did not "question[] [the victim] about any conflicting previous statements." The Petitioner explained that she understood that her defense at trial would be that her co-defendant had been the only one to hit the victim and that the victim had previously harassed other women. The Petitioner testified that she was prejudiced by the totality of trial counsel's actions and that she would have "ple[d] out to a lot less time."

On cross-examination, the Petitioner testified that she recalled a "possibility" of a conversation regarding a plea between trial counsel and the State before trial. She stated that this conversation took place shortly before trial and that, on the Sunday before her trial, she "was under…the indication that…we would probably be all right from what [she] understood because of [her] co-defendant's testimony…and another witness that was supposed to have testified at trial." Thus, she came to the decision with trial counsel to proceed to trial.

The Petitioner also testified that her previous counsel had discussed the victim's injuries with other doctors, and the Petitioner was aware that trial counsel had met with previous counsel to relay this information. The Petitioner stated that she was "absolutely not" aware that trial counsel had met with the State's expert witness prior to trial, but she stated that trial counsel did cross-examine the State's expert for a "long time[,]"

including questions "about the car wreck and how the car wreck could be the [possible cause] of the trauma." The Petitioner agreed with the State that trial counsel had partially "present[ed] an alternative theory to the jury about how the brain injury could have occurred and the jury rejected [it][.]" The State explained that the Petitioner's trial counsel did not have the law enforcement records that documented the raid on the victim's store by the SWAT team.

The State also questioned the Petitioner about her "trial strategy," to which the Petitioner responded that putting the crime on the co-defendant was "part of it[.]" The Petitioner believed that it was prejudicial to present the weapons to the jury with nothing to contradict their introduction. The Petitioner stated that trial counsel told her that "if [she] testified [she] would go to jail." She acknowledged that the trial judge questioned her extensively about her right not to testify. The Petitioner did not present any other witnesses at the post-conviction hearing.

Trial counsel testified that he had been licensed to practice law for almost eleven years, and he had been practicing criminal law in Tennessee for several years when he was appointed to the Petitioner's case. He stated that, once he was appointed to the Petitioner's case, he obtained discovery from the State, met with the Petitioner's previous counsel, read the transcripts from the preliminary hearing and suppression hearing, met with the Petitioner in jail, and successfully petitioned the trial court to release the Petitioner on bond prior to trial. The Petitioner remained out on bond until the end of trial. Trial counsel explained that his trial theory was to convince the jury that the co-defendant had hit the victim and was "running the show," while the Petitioner was "just along for the ride" and "didn't have a way to say no to get out of it." He testified that he discussed this strategy with the Petitioner, and she never "disagree[d] with the trial strategy." He also discussed the case at length with a private investigator.

Trial counsel asserted that he had "many discussions" with the State to try to obtain a more favorable plea offer for the Petitioner. He stated he presented a ten-year offer to the Petitioner, but "she had no interest in taking it at that point." He advised the Petitioner to take the offer, but she was not interested. He also testified that he had discussions with the State to allow the Petitioner to serve her sentence at the Johnson City Jail, which would have afforded the Petitioner more privileges and allowed her to be closer to her family. Trial counsel said he discussed this possibility with the Petitioner, but she was not interested in taking the plea.

Regarding the expert medical witness issue, trial counsel determined that, "It wasn't really worth it to have spent a lot of time going down that road." He spoke with Petitioner's previous counsel, all of whom had discussed the issue at length, and none of them felt as though the issue was worth pursuing. He also said that he spoke with the

State's expert medical witness and made himself familiar with what he believed this expert's testimony would be at trial. He stated that the Petitioner knew that he did not plan to use an expert at that point, and they decided to go in a different direction. He believed that he cross-examined the State's expert witness to the best of his ability, but he described the expert as "an excellent witness." On cross-examination, trial counsel stated that he would not have been prepared for the State's expert witness's testimony even if he had spoken to another expert prior to trial.

As to the Petitioner's claim that trial counsel failed to seek scientific testing of evidence presented to the jury, he disputed that a request was ever made for this testing. In any event, he said that this testing would not have helped the Petitioner's case because their theory of the case was that the Petitioner "wasn't the one that was doing anything with a weapon." He testified that he discussed this with the Petitioner. On cross-examination, trial counsel admitted that proof of a deadly weapon "may have been" a very important element of the especially aggravated robbery and kidnapping offenses.

Trial counsel testified that he did not remember having any discussions with the Petitioner during voir dire about a potential juror that the Petitioner knew. He did not remember conducting specific voir dire of any one juror, but he was sure that he would have asked the jury as a whole if they knew the Petitioner. He said that if the Petitioner had told him that one of the jurors did not like her, "[He] probably would have asked her not to be a member of the jury."

Trial counsel testified that he cross-examined the victim to the best of his ability. He did not recall any information in the Petitioner's case file about a raid on the victim's store, and he did not believe that this would have been strong information for him to use. He did not remember the Petitioner demanding him to explore this information or raising this issue with him. Trial counsel asserted that the Petitioner never indicated to him that she was not happy with the way he was proceeding at trial or asked him to change the trial strategy.

On September 14, 2017, the post-conviction court entered a detailed order denying post-conviction relief.

## ANALYSIS

The Petitioner argues that trial counsel was ineffective in the following ways: (1) failure to secure an expert witness for trial; (2) failure to seek scientific testing of evidence presented by the State and failure to challenge such evidence; (3) failure to present a plea offer to the Petitioner; (4) failure to challenge and remove a juror whom the Petitioner knew and felt would be biased against her; (5) failure to impeach the victim

about inconsistencies in his statements; (6) failure to address merger of the underlying offenses; and (7) failure to question the victim or present evidence of other injuries sustained by the victim that could have alleviated the seriousness of the Petitioner's crimes. The Petitioner also argues that she is entitled to a second post-conviction hearing because post-conviction counsel was subsequently suspended from the practice of law by the Tennessee Supreme Court. The State responds that the "decisions made by trial counsel were the result of deliberate trial strategy and that these decisions did not negatively impact Petitioner's chances for a favorable trial outcome." Therefore, the State contends that the Petitioner did not prove her claims by clear and convincing evidence. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness

under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

"In evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**Failure to secure an expert witness for trial.** First, the Petitioner contends that trial counsel was ineffective in failing to call an expert witness to challenge the cause of the victim's injuries and to contradict the State's expert witness's testimony. She argues that securing an expert witness to rebut the testimony of the State's witness would have allowed the jury to get a full understanding of the case at hand. She claims that trial counsel's failure to do so prejudiced her, because as trial counsel noted, the State's expert witness was "excellent." The State responds that trial counsel made a strategic decision to attack the State's expert testimony through cross-examination. The State also notes that the Petitioner failed to introduce an expert witness at the post-conviction hearing to rebut this testimony.

In review of this issue, the post-conviction court determined as follows:

During the evidentiary hearing, Petitioner failed to present witnesses, medical experts or lay witnesses, who would have established that the serious bodily injury suffered by [the victim] was not related to nor the proximately caused [sic] by the events of April 9, 2005. Further, Petitioner failed to establish that, if this proof existed, it would have made a difference in the ultimate verdict reached by the jury.

- 10 -

Petitioner offered no deposition testimony of neurologists or any physicians substantiating her claim that actions of she and her co-defendant did not cause the head injury described by [the victim] and medically detailed by Dr. Smith during the trial. Further, there is no evidence in the record to support a conclusion that the jury would have credited this testimony, had it been introduced, over the testimony of Dr. Smith.

Failure to present evidence concerning an allegation made in the request for relief, other than the mere speculation of Petitioner, results in a waiver of that issue. Montreal Lyons v. State, No. W2010-00798-CCA-R3-PC, 2011 WL 3630330 (Tenn. Crim. App. 2011). When ineffective assistance is based upon the failure to produce a potential witness, Petitioner is required to (1) Present the desired witness at the post[-]conviction hearing; (2) Provide proof at the hearing that trial counsel could have located such a witness; (3) Present favorable testimony and material testimony from the desired witness. Denton v. State, 945 S.W.2d 793 (Tenn. Crim. App. 1996).

Petitioner has failed to carry her burden on this ground, and it is, therefore, dismissed.

The record does not preponderate against the determination of the post-conviction court. The Petitioner did not present any evidence at the post-conviction hearing to substantiate her claims. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Accordingly, the Petitioner is not entitled to relief on this issue.

**Failure to seek scientific testing of evidence.** Next, the Petitioner argues that trial counsel was ineffective in failing to seek scientific testing of the alleged weapons that the State introduced into evidence at her trial. She claims that such testing could have reduced her charges. The State responds that the Petitioner has failed to substantiate her claim regarding the possible results of the desired scientific testing and that her theory of defense was that she did not hit the victim at all.

In review of this issue, the post-conviction court determined that the Petitioner had failed to establish deficient performance by trial counsel because the Petitioner failed to produce any scientific testing in support of this issue. Again, the record does not preponderate against the determination of the post-conviction court. Other than the Petitioner's testimony, which was not accredited by the post-conviction court, there was no evidence offered at the hearing to support this claim. In addition, it is not entirely clear from the Petitioner's filings how any scientific testing would have made a difference to the Petitioner's case. We presume she theorized that the testing of the

weapons would have shown an absence of her fingerprints. However, trial counsel testified, and the Petitioner agreed, that her defense strategy was to blame the offense and the injuries suffered by the victim on the co-defendant husband. The co-defendant husband's testimony corroborated her strategy, to some degree. Finally, under a theory of criminal responsibility, which was charged to the jury, it would not have made a difference whose fingerprints were found to be on the weapons used in the offense. The Petitioner has failed to prove that trial counsel was deficient in not testing the weapons or that she was prejudiced by trial counsel's actions. She is not entitled to relief on this ground.

**Failure to present a plea offer**. The Petitioner argues that trial counsel was ineffective in failing to present to her a ten-year plea offer. The Petitioner contends that if she had known about the ten-year offer made by the State, she would have accepted it. She argues that this action prejudiced her because she received an eighteen-year sentence. The State responds that the Petitioner received effective assistance of counsel with regard to her plea negotiations. We agree with the State.

In regard to this issue, the post-conviction court determined as follows:

> Petitioner has failed to show that trial counsel was ineffective during plea negotiations. The inquiry must show that "but for the ineffective advise of counsel there is a reasonable probability that the plea offer would have been presented to the Court, that the Defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances." [Lafler v. Cooper, 566 U.S. 156, 164 (2012)]. The only plea that was presented to the trial court was for twelve years and one day, which was subsequently rejected by the trial court when Petitioner expressed her preference for a trial. Trial counsel secured an offer for reduced years to be served at one hundred percent. This offer, the Court FINDS, was communicated to Petitioner and she rejected same. The Court credits the testimony of trial counsel regarding the issue of the plea offer and Petitioner's lack of interest in entering a plea. His testimony is consistent with the statement made by Petitioner when the initial plea was attempted, in that she preferred to have a trial.

> Petitioner has failed to show prejudice or that trial counsel was ineffective during the plea[-]bargaining phase of his representation. Therefore, this claim is dismissed.

The record does not preponderate against the determination of the post-conviction court. Although the Petitioner testified that trial counsel did not present the ten-year offer to her, trial counsel testified that he presented this offer to the Petitioner, and she had "no

interest" in taking the offer. The post-conviction court accredited the testimony of trial counsel, finding that it was consistent with the Petitioner's previous statement that she preferred to take the case to trial. This court does not re-evaluate factual determinations made by the post-conviction court. Vaughn, 202 S.W.3d at 115. Accordingly, the Petitioner has failed to prove by clear and convincing evidence that trial counsel failed to communicate the ten-year offer to her. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger, 279 S.W.3d at 293-94. She is not entitled to relief.

**Failure to challenge and remove an alleged biased juror.** The Petitioner argues that trial counsel was ineffective because he failed to challenge and remove a juror whom the Petitioner knew and felt would be biased against her. She stated the juror worked at the detention facility as a nurse, and the Petitioner previously worked with the juror's husband and had a contentious relationship with him. She was "very clear" with trial counsel that she knew the juror personally. In response, the State argues that the post-conviction court properly denied relief as to this issue because trial counsel testified that he did not remember the Petitioner asking him to strike this juror but that he most likely would have done so had she asked him. We agree with the State.

In denying relief as to this issue, the post-conviction court reasoned as follows:

> Petitioner testified during the evidentiary hearing that she requested during voir dire that this particular juror be excused, that she "wanted her off." Trial counsel testified that he had no recollection of any discussion about this juror with Petitioner during the trial. The Court credits the testimony of trial counsel regarding this issue.

> The issue of juror bias during Petitioner's trial should have been raised in the appeal of her conviction. The Petitioner first raised the issue in her petition for post-conviction relief. Tennessee Code Annotated section 40-30-106(g)(2010) states that a ground for relief is waived if the Petitioner personally or through an attorney failed to present it for determination in any proceeding before a Court of competent jurisdiction in which the ground could have been presented. The issue was also not raised in the motion for new trial or in the appeal of her conviction.

> Because Petitioner failed to raise the issue before her petition for post-conviction relief, the issue is waived.

Here, the post-conviction court incorrectly waived this issue because the Petitioner did not raise it on direct appeal. However, the Petitioner is not making a stand-alone claim of juror bias; but rather, she is claiming that trial counsel was ineffective for failing to challenge and remove a juror. Although the post-conviction court failed to properly

- 13 -

consider this issue, upon our review, we conclude that the Petitioner is not entitled to relief. Trial counsel testified at the post-conviction hearing that "he was sure" he would have addressed the jury as a whole on whether they knew the Petitioner. He did not remember any negative responses, and he did not recall the Petitioner bringing this issue to him during jury selection. He asserted that he "probably" would have asked the court to strike this juror if the Petitioner had asked him to do so.

Moreover, other than her own testimony, which was not accredited by the post-conviction court, the Petitioner failed to provide any evidence showing that this juror was biased against her, and she failed to present this juror at the post-conviction hearing. Black, 794 S.W.2d at 757; Smith v. State, 357 S.W.3d 322, 348 (Tenn. 2011) (holding that in order to prevail on a claim of ineffective assistance of counsel based on counsel's failure to adequately question potential jurors during voir dire, the petitioner must prove that counsel's deficiency resulted in having a jury seated who was actually biased). Accordingly, the Petitioner has failed to show that trial counsel was deficient in this regard or prejudice to her case. She is not entitled to relief on this claim.

**Failure to impeach the victim about inconsistencies in his statements.** The Petitioner argues that trial counsel was ineffective because he took no steps to challenge the victim's inconsistent statements. She argues that trial counsel had the opportunity to prove that she did not cause the injuries sustained by the Petitioner, but he failed to do so. The State responds that trial counsel extensively cross-examined the victim and that the post-conviction court found that this strategy was "the result of adequate preparation and analysis." We agree with the State.

In review of this issue, the post-conviction court determined as follows:

> As to the failure of trial counsel to impeach the victim, Mr. Don Teague, on the issue of prior inconsistent statements, trial counsel testified that during the evidentiary hearing that, during cross examination, he asked the victim about his injuries and alternative causes for the subdural hematoma. As to specific prior inconsistent [statements][,] Petitioner failed to introduce such statements or demonstrate how this resulted in prejudice to her at trial. Trial counsel cross examined the victim at length during the trial on the manner in which his injuries were inflicted. The Court FINDS that the cross examination of the victim was informed and resulted from adequate preparation and analysis of the benefits of pursuing the trial strategy that Petitioner's husband and co-defendant inflicted the injuries and was "running the show." The Court credits trial counsel's testimony regarding this issue.

- 14 -

The Court FINDS that Petitioner has failed to carry her burden of proof as to this claim for post-conviction relief and it is dismissed.

Petitioner has failed to present the required proof to substantiate the basis for these grounds alleging ineffective assistance of counsel.

The record does not preponderate against the determination of the post-conviction court. This Court has previously held that "cross-examination is a strategic and tactical decision of trial counsel which is not to be measured by hindsight." Boston v. State, No. M2010-01043-CCA-R3-PC, 2011 WL 5578996, at *7 (Tenn. Crim. App. Nov. 16, 2011) (citing State v. Kerley, 820 S.W.2d 753, 756 (Tenn.Crim.App.1991)). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App.1991). The post-conviction court found that trial counsel adequately cross-examined the victim on his inconsistent statements, based on the Petitioner's trial strategy. Therefore, the Petitioner is not entitled to relief on this ground.

**Failure to address merger of the underlying offenses.** The Petitioner argues that trial counsel was deficient for not addressing the merger of the underlying offenses in her case which resulted in two convictions. The State responds that trial counsel addressed merger of the underlying offenses multiple times at trial, and we agree.

In regard to this issue, the post-conviction court held as follows:

The trial court addressed the issue of the elemental separation of these offenses at the beginning of the case prior to jury selection, based upon a discussion in court between the prosecutor and trial counsel. This discussion was based upon this particular issue addressed in the case of State v. White, during which the trial court informed counsel of [its] intention regarding the applicability of this case. Trial counsel also addressed this issue with the court during the Motion for Judgment of Acquittal, albeit…briefly, and regarding jury instructions during the motion, as well.

The Court FINDS that the trial court addressed this issue on at least two occasions, was clearly aware of the current Supreme Court ruling in the White case and evaluated the proof, jury instructions and motion for judgment of acquittal based upon a correct application of the law.

Therefore, this claim is without merit and is dismissed, as Petitioner has failed to show how she was prejudiced.

- 15 -

Again, the record fully supports the determination of the post-conviction court. The record shows that the trial court and trial counsel addressed the issue of merger during the trial, and the Petitioner did not present any evidence at the post-conviction hearing other than her own understanding of how she should have been charged. Accordingly, she is not entitled to relief on this ground.

**Failure to question the victim or present evidence of other injuries sustained by the victim that could have alleviated the seriousness of the Petitioner's crimes.** The Petitioner argues that trial counsel was deficient for failing to present evidence of other incidents that could have contributed to the seriousness of the victim's injuries. The State responds that trial counsel cross-examined the victim on these incidents. We agree with the State.

In review of this issue, the post-conviction court held as follows:

> Trial counsel testified at the evidentiary hearing that the trial strategy developed for Petitioner's defense was that her husband was "running the show" and that any injuries were caused by him. Trial counsel further testified that he reviewed the records that would have possibly led to questioning about alternative sources of injuries and consulted prior counsel about this avenue for a defense. Mr. Bolton further testified that Petitioner was fine with the trial strategy and that the pursuit of alternative theories for the victim's injuries would have proven futile. The Court credits the testimony of trial counsel in this regard.

> Further, the State presented medical evidence from the treating physician of the victim who testified that he had reviewed other possible trauma and that he disagreed with any other conclusion except that the injuries described by the victim were sustained the day of the robbery. Trial counsel explored the alternative possible sources of trauma to the victim that could cause the subdural hematoma during cross examination. It was up to the jury to determine the credibility of the treating physician and whether or not the injuries were caused as alleged by the State.

> The Court FINDS the trial strategy was developed by counsel after consultation with his client and will not be second guessed with the benefit of hindsight. The Court must "…judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." Strickland, 466 U.S. at 689-690. The use of hindsight is not to be used to criticize trial counsel's tactics. (Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)[)].

- 16 -

Therefore, this claim is dismissed, as the burden of proof has not been met.

While the Petitioner argues that trial counsel should have impeached the victim through his prior inconsistent statements and should have asked the victim about other incidents, including the SWAT raid on his store and the minor car crash, that could have contributed to the seriousness of his injuries, the record on appeal, as well as trial counsel's testimony at the post-conviction hearing, show that trial counsel did cross-examine the victim on these issues. The appellate record shows that trial counsel cross-examined both the victim and the State's expert witness about the car wreck being a possible cause of the victim's injuries. At the post-conviction hearing, trial counsel stated that he did not recall coming across any information in his files about a raid on the victim's store, and the Petitioner did not mention this to him. Additionally, the Petitioner failed to present these records at the post-conviction hearing. Therefore, the Petitioner is not entitled to relief on this ground.

Finally, the Petitioner asserts that she is entitled to another hearing for post-conviction relief because her post-conviction counsel was suspended from the practice of law by the Tennessee Supreme Court. She argues that, because post-conviction counsel's suspension and her hearing were so close in time, she was not afforded a fair opportunity for her post-conviction petition to be heard. She also notes that post-conviction counsel failed to file a notice of appeal in her case. The State responds that Petitioner's post-conviction counsel was not suspended until the conclusion of the post-conviction matter being appealed. The State also argues that the Petitioner suffered no prejudice as a result of post-conviction counsel's failure to file a notice of appeal, as this Court accepted the Petitioner's late-filed notice of appeal. We agree with the State. Additionally, we note that a Petitioner is not entitled to effective assistance of counsel during post-conviction proceedings. House v. State, 911 S.W.2d 705, 712 (Tenn. 1995). Accordingly, the Petitioner is not entitled relief on this issue.

## CONCLUSION

Based on the above authority and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE